

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 05 2018

JULIA C. DUDLEY, CLERK
BY: A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| KEVIN ROGERS, <br><br> Plaintiff, <br><br> v. <br><br> SUMMIT RECEIVABLES, <br><br> Defendant. | Civil Action No. 3:17CV00069 <br><br> **MEMORANDUM OPINION** <br><br> Hon. Glen E. Conrad <br> Senior United States District Judge |

This case is presently before the court on plaintiff Kevin Rogers' motion for default judgment. For the reasons set forth below, the motion will be granted.

### Background

On September 22, 2017, Rogers filed this action against Summit Receivables, a debt collection agency, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p. On September 27, 2017, a private process server personally delivered copies of the summons and complaint to an agent authorized by law to receive service of process on behalf of Summit Receivables. See Proof of Service, Docket No. 4. Accordingly, service was proper under Federal Rule of Civil Procedure 4(h).

Despite being properly served, Summit Receivables failed to answer or otherwise defend the action within the time period permitted by the Federal Rules of Civil Procedure. On October 24, 2017, the Clerk entered default against the defendant. Summit Receivables has not moved to set aside the entry of default, or otherwise appeared in any manner in the case. Rogers has now moved for default judgment, and the matter is ripe for disposition.

## Standard of Review

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. Jefferson v. Briner, Inc., 461 F. Supp. 2d 430, 433 (E.D. Va. 2006). First, "the [C]lerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, a party may move the court for default judgment under Rule 55(b).

In reviewing a motion for default judgment, the court views all well-pleaded factual allegations in the complaint as true for purposes of liability. See Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); see also Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("[T]he defendant, by his default, admits plaintiff's well-pleaded allegations of fact.") (internal citation omitted). Consequently, in the default judgment context, the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 187 F.3d 628, 1999 U.S. App. LEXIS 18633, at *2 (4th Cir. Aug. 10, 1999) (unpublished table opinion).

If the facts alleged in the complaint establish liability, then the court must determine the appropriate amount of damages. Ryan, 253 F.3d at 780-81. The court may make a determination as to the amount of damages without a hearing if the record contains sufficient evidence to support the award. See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 507 (4th Cir. 1998) (noting that "in some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing"); Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 63–64 (1st Cir. 2002) (concluding that an award of statutory damages without a hearing was within the district court's wide discretion).

## Discussion

### I. Liability under the FDCPA

The FDCPA was enacted to protect consumers from abusive and deceptive practices by debt collectors, and to protect non-abusive debt collectors from competitive disadvantage. United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 135 (4th Cir. 1996). It is "a strict liability statute that prohibits false or deceptive representations in collecting a debt, as well as certain abusive debt collection practices." McLean v. Ray, 488 F. App'x 677, 682 (4th Cir. 2012). In order to establish a violation of the FDCPA, the plaintiff must prove: (1) that the defendant is a "debt collector" as defined by the FDCPA; (2) that the plaintiff has been the object of collection activity arising from a consumer debt; and (3) that the defendant has engaged in an action or omission prohibited by the FDCPA. Ruggia v. Wash. Mut., 719 F. Supp. 2d 642, 647 (E.D. Va. 2010). "Because the FDCPA is a strict liability statute, a consumer need only prove one violation to trigger liability." Grant-Fletcher v. McMullen & Drury, P.A., 964 F. Supp. 2d 514, 521 (D. Md. 2013).

According to the complaint, Summit Receivables "regularly collects, or attempts to collect, debts allegedly owed to third parties," Compl. ¶ 14, Docket No. 1, and is therefore a "debt collector" for purposes of the FDCPA. See 15 U.S.C. § 1692a(6). In July of 2017, Summit Receivables began attempting to collect an "alleged" consumer debt that Rogers originally owed to Mobiloans. Compl. ¶¶ 16-18. Summit Receivables called Rogers' cellular telephone number on multiple occasions as part of its efforts to collect the alleged debt. On more than one occasion, Rogers spoke with one the defendant's representatives. During at least one of the conversations, Rogers requested that Summit Receivables provide written documentation to verify the alleged debt. However, Summit Receivables refused to provide the requested documentation.

3

Summit Receivables also left voicemail messages on Rogers' cellular telephone number. At least one of the messages described Rogers' conduct as "malicious." Id. ¶ 22 (internal quotation marks omitted). At least one of the messages "threatened that [d]efendant would automatically debit money from [p]laintiff's checking account." Id. ¶ 23.

In addition to calling Rogers' cellular telephone number, Summit Receivables called Rogers at work, spoke with the receptionist, and tried to verify Rogers' employment. Rogers alleges that Summit Receivables has no intention of garnishing his wages. Rogers further alleges that Summit Receivables has not filed a lawsuit against him, and therefore has no judgment against him.

The court concludes that the well-pleaded factual allegations in the complaint establish that Summit Receivables violated the FDCPA. As relevant here, § 1692d of the FDCPA forbids the use of "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of debt." 15 U.S.C. § 1962d. By describing Rogers' conduct as "malicious" and threatening to automatically debit money from his checking account, Summit Receivables violated this provision. See, e.g., Huzar v. Mandarich Law Grp. LLP, No. 5:13-cv-00770, 2013 U.S. Dist. LEXIS 115863, at *7 (C.D. Cal. Aug. 14, 2013) (concluding that alleged threats to debit a plaintiff's checking account supported a claim under § 1962d).

The FDCPA also prohibits the use of "any false, deceptive, or misleading representation or means" in debt collection, and provides a non-exhaustive list of prohibited conduct. 15 U.S.C. § 1692e. Such conduct includes the "[t]he representation or implication that nonpayment of any debt will result in . . . garnishment, . . . unless such action is lawful and the debt collector or creditor intends to take such action," Id. § 1692e(4), and "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," Id. § 1692e(5). Based on the well-pleaded

4

factual allegations, the court concludes that Summit Receivables violated § 1692e by implying that it would garnish Rogers' wages when it did not intend to take such action, and by threatening to automatically debit Rogers' checking account without his permission. See, e.g., Villanueva v. Account Discovery Sys., LLC, 77 F. Supp. 3d 1058, 1075 (D. Colo. 2014) (concluding that the unauthorized withdrawal of funds from the plaintiff's bank account constituted a violation of the FDCPA).

The court further concludes that Summit Receivables violated the notice requirement of the FDCPA. "Among its safeguards against abuse and deception, the FDCPA requires a debt collector to send written notice to consumer debtors with whom it communicates in connection with the collection of a debt." Clark v. Absolute Collection Serv., Inc., 741 F.3d 487, 490 (4th Cir. 2014) (citing 15 U.S.C. § 1692g). The notice must be sent "within five days after the initial communication with a consumer," and it must include the information specified in the statute. See 15 U.S.C. § 1692g(a)(1)–(5). Here, the complaint indicates that Summit Receivables refused to provide Rogers with any written documentation of the alleged debt, much less a written notice containing the information set forth in § 1692g(a). Accordingly, Rogers has also established a violation of the FDCPA's notice requirement.

## II. Requested Remedies

Having concluded that Rogers has established violations of the FDCPA, the court must determine the relief to which he is entitled. Rogers specifically seeks to recover statutory damages, attorney's fees, and costs.

### A. Statutory Damages

Under 15 U.S.C. § 1692k(a)(2), an individual is entitled to recover statutory "damages as the court may allow, but not exceeding $1,000." In determining an appropriate amount of

damages, the court must consider a number of factors, including the frequency and persistence of the debt collector's noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional. 15 U.S.C. § 1692k(b)(1).

Applying these factors, the court concludes that Rogers is entitled to the maximum amount of statutory damages. The allegations in the complaint establish that Summit Receivables violated multiple provisions of the FDCPA. Moreover, the nature of each of the defendant's violations indicates that the defendant's noncompliance was intentional, rather than the result of accident or mistake. Accordingly, Summit Receivables will be ordered to pay $1,000.00 in statutory damages.

### B. Attorney's Fees and Costs

Plaintiffs who prevail in actions under the FDCPA are also entitled to recover "the costs of the action, together with a reasonable attorney's fee." 15 U.S.C. § 1692k(a)(3). Although attorney's fees are "mandatory in all but the most unusual circumstances," the amount of the award is left to the district court's discretion. Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628 (4th Cir. 1995).

When a statute authorizes an award of attorney's fees, courts typically apply the lodestar method of determining a reasonable award. Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998). The lodestar figure carries a "strong presumption" that it "represents a reasonable attorney's fee." McAfee v. Boczar, 738 F.3d 81, 811 (4th Cir. 2013). The figure is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. Id. The United States Court of Appeals for the Fourth Circuit has also identified a number of other factors that courts may consider in determining a reasonable fee award, including the difficulty of the issues litigated, the results obtained, and fee awards in similar cases. See Barber v. Kimbrell's,

Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)). However, these factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," Hensley v. Eckerhart, 461 U.S. 424, 34 n.9 (1983), and need not be addressed independently. See Arnold v. Burger King Corp., 719 F.2d 63, 67 n.4 (4th Cir. 1983).

Turning first to the number of hours expended on the litigation, the record reveals that Rogers' two attorneys and a paralegal expended a total of 14.7 hours on the case. The court has reviewed the records submitted in support of this figure and finds that the hours billed are reasonable. Therefore, the court will compensate Rogers for all 14.7 hours. See Valdez v. Arm Wyn, LLC, No. 7:14-cv-00263, 2015 U.S. Dist. LEXIS 76296, at *8 (W.D. Va. June 12, 2015) (Conrad, J.) (finding that a total of 15.6 hours was reasonable in an FDCPA case decided on a motion for default judgment).

The court next considers whether the hourly rate sought by Rogers' attorneys is reasonable. Rogers' lead counsel from Chicago, Illinois, Michael Agruss, and his local counsel from Richmond, Virginia, Richard Ferris, seek to be compensated at a rate of $375.00 per hour. However, Agruss, who performed most of the work in the case, acknowledges that he has been awarded an hourly rate of $290.00 to $300.00 in fourteen FDCPA cases in other districts.

Based on the court's knowledge of the market and its review of recent cases under the FDCPA, the court believes that the rate requested by both of Rogers' attorneys exceeds that which would reasonably be charged for similar work in this area. See Farbotko v. Clinton Cty., 433 F.3d 204, 209 (2d Cir. 2005) (observing that the court's inquiry into a reasonable attorney's fee may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district"). The court will therefore reduce the requested rate to $300.00 per

7

hour. See, e.g., Bickley v. Gregory, No. 2:16-cv-00131, 2016 U.S. Dist. LEXIS 148654, at *30 (E.D. Va. Oct. 7, 2016) (recommending that counsel be compensated at an hourly rate of $300.00, rather than $375.00), report and recommendation adopted, 2016 U.S. Dist. LEXIS 148408 (E.D. Va. Oct. 26, 2016); Dryden v. Accredited Collection Agency, Inc., No. 3:14-cv-00255, 2015 U.S. Dist. LEXIS 75285, at *20 (E.D. Va. June 10, 2015) (approving a billing rate of $300.00 and noting that plaintiff's counsel previously had been awarded fees based on the same rate in similar cases); Valdez, 2015 U.S. Dist. LEXIS 76296, at *9 (reducing the rates of partner attorneys to $250.00).

The number of hours expended by Rogers' attorneys and their support staff, when combined with the applicable hourly rates, produces a lodestar figure of $3,972.50. Having considered the other applicable factors, the court finds that no further adjustment of the lodestar is warranted in the instant case. Accordingly, the court will award attorney's fees in the amount of $3,972.50.

Rogers also seeks to recover costs in the amount of $470.00. The requested costs consist of the $400.00 filing fee and a $70.00 fee paid to the private process server. Although the Fourth Circuit has not addressed the interplay between § 1692k(a)(3) and 28 U.S.C. § 1920, the court will exercise its discretion to limit the costs in this matter to those recoverable under the latter provision. See, e.g., Hutchens v. West Asset Mgmt., Inc., No. 1:11-00996, 2013 U.S. Dist. LEXIS 45263, at *16 (S.D. W. Va. Mar. 29, 2013) (observing that "[c]ourts have determined that the cost award pursuant to § 1692k(a)(3) is limited to the costs allowed under 28 U.S.C. § 1920") (citations omitted). Because § 1920 does not expressly allow for the recovery of private process fees, the court declines to tax the $70.00 fee incurred in serving the complaint. See Bellofatto v. Red Robin Int'l, No. 7:14-cv-00167, 2015 U.S. Dist. LEXIS 76517, at *4 (W.D. Va. June 12,

2015) (Conrad, J.); see also Selective Way Ins. Co. v. Apple, No., 3:13-cv-00042, 2017 U.S. Dist. LEXIS 4220, at *4 (W.D. Va. Jan. 11, 2017) (Moon, J.) ("joining the trend within the Western District of Virginia" to decline to tax the cost of private process servers since "it simply is not among the six taxable costs listed in § 1920"). Accordingly, the court will award costs against the defendant in the amount of $400.00.

## Conclusion

For the reasons stated, the court will grant Rogers' motion for default judgment against Summit Receivables. Judgment will be entered in favor of Rogers and against Summit Receivables in the amount of $5,372.50, which consists of $1,000.00 in statutory damages and $4,372.50 in attorney's fees and costs.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 5th day of March, 2018.

_____
Senior United States District Judge